# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | |
|---|---|
| DONNA K. REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-04155-CV-C-NKL |
| | ) |
| BOARD OF TRUSTEES OF COLUMBIA | ) |
| COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Donna K. Reed ("Dr. Reed") brings this action against Defendant Columbia College of Missouri[1] ("Columbia College"), asserting claims for violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206; gender discrimination under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e, et seq.; gender discrimination under the Missouri Human Rights Act ("MHRA"), §§ 213.010, et seq.; and, breach of written bilateral contract.[2] This

---

[1]Columbia College of Missouri represents that it, and not the "Board of Trustees of Columbia College," is the proper defendant in this action. Defendant has not moved for judgment on the grounds that the wrong party was sued, and has defended this case on the merits as Columbia College of Missouri. Therefore, for the purposes of this Order, the Court will deem that Defendant has conceded that Plaintiffs' alleged error in naming the Board of Trustees of Columbia College as the defendant does not affect the Court's resolution of the issues before it, and will not prejudice Defendant.

[2] Reed did not respond to Columbia College's statements of fact nor legal argument as to her claim for age discrimination. Because there is no *prima facie* case or allegation of pretext for the Court to consider, it grants Columbia College's Motion for Summary Judgment as to Reed's Count III for age discrimination. (Docs. ## 52, 23). On December 12, 2007, the Court dismissed Reed's § 1983, retaliation and tortious interference with contract claims.

1

matter is before the Court on Dr. Reed's and Columbia College's cross motions for summary judgment. [Docs. ## 38, 39]. For the following reasons, Columbia College's motion is GRANTED as to Counts III, IV (to the extent it states a claim for gender discrimination under the MHRA), V, VI and VIII and DENIED as to Count II. Reed's motion is DENIED.

## I.    UNDISPUTED FACTS

### A.    Overview

Columbia College is a private liberal arts college based in Columbia, Missouri. (Brouder Aff. ¶ 3). The day program at Columbia College is composed of eight (8) disciplinary departments and approximately 50-55 full-time faculty. (Doc. # 38 Ex. 1, 2). The faculty are organized into five ranks: Full Professor, Associate Professor, Assistant Professor, Instructor and Adjunct faculty. All ranks may be hired as non-tenure track but only instructors and adjunct faculty are always on non-tenure track. (Brouder Dep. 11). Generally, every full-time faculty member at Columbia College is expect ed to teach 24 hours of courses and serve on various committees. *Id*. at 47. Individuals hired as faculty at Columbia College are typically a result of a national search and the most qualified candidate is offered the position. (Brouder Dep. 8-9; Smith Dep. 17-18).

On May 8, 2003, Columbia College offered Dr. Reed $43,500 for employment as a tenure-track associate professor in Columbia College's Department of Education as Director of Field Experiences beginning with the 2003-04 academic term.[3] (Reed Aff ¶ 1). Dr. Reed

---

[3] Reed did not attempt to negotiate her initial salary. (Smith Aff. ¶ 31). The Columbia College Board of Trustees sets an overall percentage increase that may be used for staff salary

2

accepted the probationary appointment under the terms contained in the offering letter and Notice of Appointment. (Compl. ¶ 6). The Notice of Appointment letters were signed by Reed, Terry Smith ("Dean Smith"), Executive Vice President and Dean for Academic Affairs and Columbia College President Gerald Brouder ("President Brouder"). (Compl. Ex. A-2). Dr. Reed's stated appointment was subject to terms and conditions contained in the Faculty Handbook and Academic Affairs Regulations ("Faculty Handbook"). *Id*. Dr. Reed was awarded a summer research grant in 2004; served as Director of the DAYSTAR and MAT teacher-training programs; served on committees as appointed; and, taught the equivalent of a 24 hour course load. (Doc. # 38 Ex. 15, 18, 19, 21, 34). In March, 2004, Dean Smith asked Dr. Reed to serve as Chair of the Education Department. (Reed Dep. 128). Dr. Reed accepted the role as Chair knowing that "personality conflicts" existed in the Education Department. *Id*. at 140.[4] During Dr. Reed's term as Chair, Dean Smith received complaints about her leadership of the Department. (Smith Aff. ¶ 37). Nonetheless, Columbia College renewed Dr. Reed's appointment for the 2004-05 term and increased her salary to $46,110, but in March, 2005, Dean Smith requested Dr. Reed "to step aside as Chair" and took

increases. (Brouder Aff ¶ 4). Dean Smith is responsible for making all salary recommendations to President Brouder, who works with various executive level staff members to determine how the percentage raises should be distributed. (Brouder Aff. ¶ 5; Smith Aff. ¶¶ 8, 20). Dean Smith makes salary recommendations based on teaching evaluations from students for all faculty and receives information from Department Chairs. *Id*. He also considers the faculty member's contributions through leadership in committees and other administrative positions. *Id*. at ¶ 21.

[4] In his March 3, 2005 letter to the Education Department faculty announcing the removal of Dr. Reed from Chair, Dean Smith noted that the "department remains in disarray" and he "regretted that [the faculty] have been unable to resolve [their] professional and personal differences."

personal control of the Department. (Smith Aff. ¶ 39, 42 Ex. C). Columbia College renewed Dr. Reed's appointment and salary for the 2005-06 term. (Doc. 38 Ex. 31). On November 2, 2005, four members of the Education Department evaluated Dr. Reed's performance and affirmed that she was on track for tenure with one faculty member giving her a negative evaluation. (Reed Dep. 202-207). On March 1, 2006, President Brouder sent Dr. Reed a letter notifying her of his offer of a faculty appointment for academic year 2006-07 with a salary of $46,110. (Doc. 38 Ex. 6).

On July 10, 2006, President Brouder notified Dr. Reed that pursuant to Section VI.E.1.g of the Faculty Handbook, she was being placed on leave with pay for the 2006-07 academic year to pursue professional opportunities, and that, pursuant to Section V.D.5 of the Faculty Handbook, she would not be reappointed for the 2007-08 academic term. (Doc. 38 Ex. 4; Reed Dep. 227-28). On the same day, Dean Smith sent Dr. Reed a memo titled "History of Employment since 2004"and concluded that "the following instances reflect a pattern of errors, questionable judgment, poor performance and non-performance." (Reed Dep. 267-68).

On July 10, 2006 and July 18, 2006, President Brouder and Dean Smith, respectively, informed Dr. Reed that she needed to vacate her office and turn in her keys and all other Columbia College property, that her computer was being made available to another employee, and that her voicemail would be discontinued. (Brouder Dep. 40). On July 31, 2006, Professor Reed filed a "Statement of Grievance" alleging that President Brouder's action was based on inadequate consideration, violation of academic freedom, gender

4

discrimination and sexual orientation discrimination. (Smith Aff. ¶¶ 69, 70). Dr. Reed further alleged that President Brouder failed to follow the dismissal for cause procedures regarding her suspension, dismissal and non-reappointment.

On September 18, 2006, Dean Smith informed Dr. Reed that pursuant to Section V.M.d of the Faculty Handbook, the Tenure Review and Promotion Board ("TRAP") Committee met on September 15, 2006, to consider Professor Reed's allegations. The TRAP committee found no cause for violation of academic freedom or discrimination. (Reed Dep. 290-93). Dean Smith also informed Dr. Reed that the judgment of TRAP did not warrant a formal proceeding as set forth in Section V of the Handbook. *Id.* On September 20, 2006, Professor Reed was informed by Dr. Hoyt Hayes, Faculty Grievance and Appeals Committee Chair, that this committee met to consider her grievance and pursuant to Section N.1.d of the Faculty Handbook this committee had no jurisdiction to hear her grievance. (Smith Aff. ¶ 73).

On September 21, 2006, Dr. Reed and her attorney indicated concerns with improper procedures as required by the Faculty Handbook and requested compliance with those procedures, a reconsideration, and a request for the reasons for her non-reappointment. On November 3, 2006, President Brouder, after receipt of a second request for reconsideration by letter from her attorney dated October 19, 2006, informed Professor Reed that he was denying her request for reconsideration.

Subsequent to her dismissal from Columbia College, Dr. Reed applied to thirty-two academic institutions without success. (Reed Dep. 266-67). She indicated that she was a

current employee of Columbia College on her applications. *Id.* Dr. Reed was informed in two job interviews that she would not be considered for employment because of "what happened" at Columbia College. (Reed Aff. ¶ 9).

In addition to her breach-of-contract claim, Dr. Reed asserts that male faculty at Columbia College are paid more for substantially equal work. For academic year 2004-05, the following male assistant professors or instructors, i.e. ranked lower than Dr. Reed, were paid higher salaries: Assistant Professor Frank Somer (Science) - $48,300; Instructor Thomas Stauder (Business Administration) - $52,830; Assistant Professor Liow (Computer and Mathematical Sciences) - $63,000.[5] (Doc. 38 Ex. 1; Smith Supp. Aff ¶¶ 24, 43, 49). For academic year 2005-06, the following male assistant professors or instructors, i.e. ranked lower than Dr. Reed, were paid higher salaries: Assistant Professor Danny Campbell (English) - $46,746; Assistant Professor Frank Somer (Science) - $49,747; Assistant Professor James Kern (Education) - $48,731; Instructor Thomas Stauder (Business Administration) - $55,472. (Doc. 38 Ex. 1). 37. Female faculty salaries for Associate Professors were only 86.3 percent of male associate professor salaries at Columbia College for academic year 2005-06. They were anticipated to rise to 89.3 percent in academic year 2006-07 depending on remaining hires. (Smith Dep. 200-210). Average associate professor salaries at Columbia College for academic year 2005-06 were $50,264 for females and

---

[5] Assistant Professor Campbell made less than Dr. Reed in 2004-05 ($44,100); Associate Professor Brad Lookingbill was an associate professor, instead of an assistant professor as Dr. Reed asserts; Instructor Mike Perkins also made less than Dr. Reed during the relevant period. (Smith Supp. Aff. ¶¶ 12, 38, 39).

$58,243 for males. *Id.*

**B.     Discussion**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson,* 477 U.S. at 248.

**1.     Count II - Equal Pay Act**

To establish a violation of the Equal Pay Act for unequal pay for equal work, the plaintiff must prove that (1) plaintiff was performing work which was substantially equal to

7

that of male employees considering the skills, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the male employees were paid more under such circumstances. *Broadus v. O.K. Industries, Inc.*, 226 F.3d 937, 941 (8th Cir. 2000).

Once a plaintiff has met this initial burden, the defendant may raise one of four affirmative defenses to justify the wage differential: (1) a seniority system; (2) a merit system; (3) a "system which measures earnings by quantity or quality of production"; or (4) "any other factor other than sex." 29 U.S.C. § 206(d)(1).

Professor Reed has identified five male faculty members she alleges were paid more for substantially equal work. Columbia College concedes that the closest comparative faculty member is Assistant Professor James Kern who was paid $44,625 in 2003-04; $46,410 in 2004-05 and $48,731 in 2005-06.[6] Dr. Reed and Dr. Kern were in the same department with similar teaching and administrative duties working under similar conditions.[7]

---

[6] Columbia College argues that Reed did not allege an Equal Pay Act violation with respect to Assistant Professor Kern for the 2005-06 academic term. Dr. Reed did raise Kern's salary in her motion for summary judgment, however, with supporting evidence.

[7] Columbia College encourages the Court to disregard any comparative faculty not within the Education Department. *Strag v. Board of Trustees, Craven Community College*, 55 F.3d 943, 950 (4th Cir. 1995). Dr. Reed encourages the Court to leave the fact-intensive nature of comparing faculty positions to a jury. *Lavin-McEleney v. Marist College*, 239 F.3d 476 (2d Cir. 2001). Given that Columbia College has not established the existence of a "seniority system" and the fairness of Dean Smith's evaluations requires jury determination, the Court will permit Dr. Reed to use those male faculty members for comparison for whom Columbia College's only justification is the "merit" increase as determined by Dean Smith. Therefore, Dr. Reed will be permitted to use for comparison Assistant Professor Danny Campbell (English) and

8

Columbia College responds that it has established an affirmative defense as a matter of law. Columbia College argues that Kern received higher pay because he was hired as a Visiting Professor for 2002-03 at a salary of $42,500 and his salary was not affected by the performance deficiencies Dean Smith noted for Professor Reed.[8] While both of these explanations constitute "factors other than sex," the Court cannot conclude that no reasonable juror could believe Dr. Reed's argument that Dean Smith enjoys significant discretion over faculty salaries, favors male faculty and that favoritism accounts for Kern's higher pay.[9] *Ridgway v. United Hospitals-Miller Div.*, 563 F.2d 923, 926 (8th Cir. 1977) (citing *Hodgson v. Security National Bank*, 460 F.2d 57, 59 (8th Cir. 1972) (requiring that the factor of sex has "nothing to do" with the wage differential). This is especially true where a significant portion of the evidence marshaled in support of Columbia College's motion is drawn from the deposition and affidavit testimony of Dean Smith himself who admittedly disagrees with Dr. Reed on teaching styles. (Reed Dep. 201). Columbia College offers no evidence that these differences are part of a seniority or merit "system" and, indeed, the principal factor

---

Assistant Professor Frank Somer (Science) as well as Kern. The Court will not permit Dr. Reed to use Assistant Professor Liow (Computer and Mathematical Science) or Instructor Stauder (Accounting) as those faculty teach unique, technical subjects for which a higher salary is required. (Smith Aff. ¶¶ 23, 48). Reed does not dispute this explanation which is clearly a factor "other than sex."

[8] Dean Smith has provided affidavit testimony that Dr. Reed received "some of the lowest teaching evaluations in the College" and that a student complained that Dr. Reed had mistreated her. (Smith Aff. ¶¶ 48, 53).

[9] But at her deposition, Dr. Reed admitted that during her time at Columbia College she believed that Dean Smith had overlooked important infractions committed by members Dr. Becky Widener and Dr. Ann Harvey. (Reed Dep. 133).

9

in determining faculty salary raises appears to be Dean Smith's discretion. (Smith Aff. ¶¶ 22-23). Professor Reed has offered evidence that Dean Smith, whether consciously or not, arguably favored male faculty. (Doc. 38 Ex. 35; Begley Aff. ¶¶ 7-8; High Aff. ¶ 7).[10] On April 5, 2006, Dr. Pam McClure, a day program faculty member at Columbia College, expressed her concerns to President Brouder that Dean Smith was basing her salary raise on hearsay and distorted evaluations rather than documented performance. (Doc. 38 Ex. 35). A reasonable juror could conclude that Columbia College, and specifically Dean Smith, paid Professor Kern more than Professor Reed because of her sex. Similarly, the Court must deny Reed's motion for summary judgment because a reasonable juror could conclude that Kern's higher pay was due to the one year he spent as a Visiting Assistant Professor prior to his promotion to Assistant Professor. In essence, a jury must be allowed to decide whether they believe Dean Smith, Dr. Reed or other witnesses.

## 2. Counts IV and V – Gender Discrimination

Reed claims that her gender was a determinative or at least a contributing factor in her non-reappointment. Columbia College responds that Reed was not reappointed due to

---

[10] Columbia College requested that the Court strike the affidavit of Assistant Professors Jacqueline High and Donna Begley, also in the Education Department, because 1) they are not based on personal knowledge and 2) they were not filed with the motion and were filed out of time. The Court has only considered those statements in Begley's and High's affidavits which are based on personal knowledge. While Columbia College is correct that affidavits should generally be served with the motion, Fed. R. Civ. P. 56(e) permits the district court wide latitude in permitting affidavits to be supplemented or opposed when making a determination as to summary judgment. *See also Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir.1996). Columbia College had more than sufficient time to consider the affidavits when drafting its reply and supplemental briefs, and the Court therefore denied Columbia College's motion to strike the affidavits in its order of July 23, 2008. [Doc. # 66].

concerns about her performance. Courts employ the *McDonnell Douglas* burden shifting analysis in deciding whether a Plaintiff's claim for gender discrimination survives summary judgment:

> The employee [alleging discrimination] bears the initial burden of proving a prima facie case of discrimination. The employer then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Finally, to prevail, [the employee] must show that the [employer's] proffered reason was a pretext for discrimination.

*Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 (8th Cir. 2007). For purposes of summary judgment only, the Court will assume that Reed has established a prima facie case of gender discrimination. Nonetheless, Columbia College has presented a legitimate, nondiscriminatory reason for not renewing Reed's appointment: poor performance. Therefore, there is no presumption of discrimination and Reed can avoid summary judgment only if the evidence creates (1) a fact issue as to whether Columbia College's stated reason is pretextual, and (2) a reasonable inference that gender was a determinative, or, for purposes of the MHRA,[11] a "contributing," factor in Columbia College's decision not to reappoint her. *See Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831 (8th Cir. 2006); *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004); *Mayer v. Nextel W. Corp.*, 318

---

[11]Reed argues that – despite the fact that this Court dismissed Count IV (a retaliation claim brought under the MHRA) – allegations made elsewhere in her Complaint were incorporated by reference into Count IV such that it also stated a claim for gender discrimination under the MHRA. The Court need not decide whether Reed's Complaint in fact alleges a cause of action in Count IV for gender discrimination under Missouri law because it finds that Reed has failed to provide evidence sufficient for a reasonable juror to find that Columbia College's reasons for terminating her were pretextual under either Title VII or even under the more lenient "contributing" test of the MHRA.

F.3d 803, 807-08 (8th Cir. 2003); *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007). Reed must "do more than show that [her non-reappointment] was ill-advised or unwise . . . [she] must show that [Columbia College] has offered a 'phony excuse.'" *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2007) (quoting *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005)). "[T]he employment-discrimination laws have not vested in federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995) (citations omitted).

Evidence of pretext includes evidence: (1) that an employer's justification has no basis in fact, where the employer knows the justification is unfounded; (2) that similarly situated male employees received preferential treatment; and (3) that a discriminatory attitude existed in the workplace. *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001) (citations omitted).

Reed offers three basic categories of evidence in support of her claim that Columbia College's performance justification was pretext for gender discrimination. First, she offers statistical evidence the she argues is demonstrative of differential treatment and/or a discriminatory attitude at Columbia College. Second, she offers several remarks made by President Brouder and Dean Smith that she argues are evidence of a discriminatory attitude at Columbia College. Finally, she offers the opinions of several current and former female faculty members at Columbia College that men are treated better than women, and that a

12

discriminatory attitude exists at the College.

<h3 style="text-align:center">a.        Reed's Statistical Evidence</h3>

First, Reed offers her own affidavit testimony that, since 2005, 8 out of 22 female faculty at Columbia College (36%) were either non-reappointed or have otherwise left the employ of the College, compared to only 2 out of 33 males (6%). (Pl.'s Sugg. Opp. 6). She further offers as evidence of pretext the fact that all the male members of the TRAP Board who voted to deny her grievance voted against her, while 3 of 4 female members of the Board voted with her, and that the Grievance and Appeals Committee, who voted unanimously to deny her grievance, was composed of only men. *Id.* Further, in her supplemental briefing in opposition to Columbia College's motion for summary judgment, Reed offered the deposition testimony of Dr. Cheryl Hardy, who testified to "patterns . . . at [Columbia College] that were indicative of discrimination based upon gender." (Pl.'s Supp. Sugg. Opp. 3). However, the portions of Dr. Hardy's deposition cited by Reed basically refer to the same general "patterns" pointed out by Reed herself - that more men than women are employed at Columbia College and that there were more male than female department chairs.

"[A] raw numerical gender breakdown of a handful of . . . employment decisions, the outcomes of which are more favorable to one gender, does not reasonably . . . lead to the conclusion that the decision maker has a gender bias or that a particular employment decision was motivated by gender." *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685 (8th Cir. 2002) (internal quotation omitted). Reed's statistical evidence that more female than male employees left Columbia College since 2005 – and that more men than women are employed

13

at the College – is not proof of discrimination based upon gender.  For example, her statistics do not indicate why women left in greater numbers than men.  Without more, this evidence cannot "reasonably or logically lead to the conclusion" that Reed's gender contributed to or was the determinative factor in her non-reappointment.  Reed's evidence that the votes of the TRAP and Grievance and Appeals Committees broke along gender lines is not persuasive to show the President Brouder decided to not renew Reeds contract.  She argues that an inference of gender discrimination may be drawn by virtue of the fact that those who voted against her were mostly men.  However, this Court will not presume that these individuals harbored discriminatory animus simply because they are men, and there is no evidence that the votes were based on Reed's gender. None of the above statistical "evidence" pushes Reed's claims of pretext "beyond speculation to the realm of reasonable inference"  *Id.* at 679.

### c.     Remarks of Smith and Brouder

Second, Reed offers as evidence of a discriminatory attitude at Columbia College two remarks made by Dean Terry Smith and President Gerald Brouder.  First, Reed points to comments made by Dean Smith at a fall faculty conference in 2008, two years after her non-reappointment.  Dean Smith, referring to a sign outside of a second-hand shop, said: "We exchange anything – bicycles, washing machines, etc.  Why not bring your wife along and get a wonderful bargain?"  (Pl.'s Supp. Sugg. Opp. 12).  Second, Reed says that President Brouder told her, when she was Chair of the Education Department, "You've got too many women in the department.  I had the same kinds of problems at the Nursing School.  They

14

were always fighting and could not get along."  (Pl.'s Sugg. Opp. 6).

Assuming the above comments were actually made, as the Court must at the summary judgment stage, there is no evidence in the record that the comments were in any way related to President Brouder's decision to put Reed on leave to pursue professional opportunities and not renew her contract.  As such, these remarks are at most "stray remarks" which "are insufficient without more to generate a genuine issue of fact on the question of pretext." *Ramirez v. Gencorp, Inc.*, 196 Fed. Appx. 438, 441 (8th Cir. 2006) (citing *Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999); *Rivers-Frison v. Southeast Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998).

### c.    Opinions of Current and Former Faculty

Third, Reed offers the opinions of current and former faculty members at Columbia College that male employees are treated better than female employees, and that a discriminatory attitude exists at the College.  First, she offers the testimony of Drs. Kathleen Fitzgerald, Cheryl Hardy, Joann Wayman, and Jacqueline High that each believed that Reed and other female faculty members were "treated differently than male faculty members by the actions of Dean Terry Smith" due to gender discrimination. (Pl.'s Supp. Sugg. Opp. 3). Reed cites deposition testimony wherein these faculty members state that they "believed" or "felt" that they and other female faculty were discriminated against on the basis of gender, and that they believed that Reed had been discriminated against as well.  *Id.* at 3–4.  A review of their deposition testimony reveals that these faculty members' opinions and beliefs are all

15

related to stray remarks made by Dean Smith, or conjecture.[12] Mere speculation of other

faculty members that Dean Smith might harbor a discriminatory attitude, without concrete

facts, cannot create an issue of fact for trial. *See Rose-Maston v. NME Hosps.*, 133 F.3d

1104, 1109 (8th Cir. 1998).

Current and former faculty members' opinions that Reed was treated differently by

Dean Smith in comparison to "other male faculty (most notably Dr. Ken Middleton)" also

fail to establish an issue of fact for trial. Reed has failed to produce evidence of a similarly

situated male faculty member with a similar performance record who was treated more

favorably than she was. To demonstrate an issue of fact for trial, Reed must show that "the

individuals used as comparators . . . dealt with the same supervisor, . . . [were] subject to the

same standards . . . and [had] engaged in the same conduct without any mitigating or

distinguishing circumstances." *Harvey v. County of Koochiching*, 527 F.3d 711, 721 (8th

Cir. 2008). While Dr. Reed's witnesses stated that Dr. Ken Middleton had missed meetings,

failed to grade papers in a timely fashion, had issues with students, or conducted ineffective

---

[12] Dr. Wayman testified about an allegedly discriminatory remark made by Dean Smith that was not related to Columbia College's decision not to reappoint Dr. Reed. As Defendant argues, this statement, even if true, would be an irrelevant "stray remark." Dr. High testified that Dean Smith discriminated against her on the basis of her gender by having his assistant, Terry Obermoeller go to a TRAP Board meeting and make untrue statement about her performance, but Dr. High did not state why these allegedly untruthful statements were indicative of gender discrimination. While High testified that she was passed over in favor of male faculty members for various positions, there is no indication that Dr. High was qualified for those positions or more qualified than the male employees that eventually filled them other than Dr. High's opinion. This does not create an inference of gender discrimination. Finally, Dr. Fitzgerald believes that male employees receive disproportionately large raises compared to female employees who perform at the same level, but admits she does not know what other professors are paid.

16

department meetings, none testified that Middleton had engaged in the same conduct Dr. Reed was alleged to have engaged in in the History of Employment letter. Further, none testified that Drs. Reed and Middleton were similarly situated; the two professors were in different departments, Middleton was tenured while Reed was not, and Middleton had been with Columbia College longer than Reed. Reed cannot show that any male employee with the performance problems she was alleged to have had was reappointed while she was not. Other faculty members' opinions that Middleton may have been treated differently because he is a man, as opposed to a tenured faculty member, is speculation.

Finally, these faculty members offered their opinions that the reasons for Reed's non-reappointment given by Dean Smith in his History of Employment letter "were impossible to be concluded based on the evidence and explanations presented by Dean Smith." However, "[a] proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765 (8th Cir. 2008) (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006)). Therefore, evidence that Dean Smith was incorrect in his assessment of Reed's job performance is irrelevant absent some indication that Dean Smith knew the reasons he listed in his History of Employment letter were false. There is no indication that Dean Smith or President Brouder doubted the allegations made in Dean Smith's History of Employment letter.

Most importantly, the facts surrounding Reed's appointment and non-reappointment indicate that gender was not a factor in her non-reappointment. "[T]here is a strong inference

that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." *Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (quoting *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362 (8th Cir. 1997) and citing *Lowe v. J.B. Hunt Transp.*, 963 F.2d 173, 174-75 (8th Cir. 1992)). The Columbia College officials who made the decision to appoint Dr. Reed in 2003 – Dean Smith and President Brouder – were the same officials who made the decision not to reappoint her in 2006. It is highly unlikely that the same officials who hired Reed and made her a department chair developed a bias against women that caused them not to reappoint her less than three years later. Based upon the lack of relevant evidence of pretext and on the fact that Reed was hired and fired by the same officials within a short period of time, no reasonable juror could conclude that gender discrimination contributed to or was determinative of Columbia College's decision not to reappoint her. Columbia College is entitled to summary judgment on Reed's gender discrimination claims.

### 3. Count VI - Breach of Written Bilateral Contract

When interpreting a contract, the Court must ascertain and give effect to the true intent of the parties. *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1023 (8th Cir. 2006) (applying Missouri law). Contracts are construed so as to give effect to all of their provisions. *See Massman Constr. Co. v. Kansas City*, 487 S.W.2d 470, 476 (Mo. 1972); *Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc.*, 59 S.W.3d 505, 510 (Mo. 2001). "Seeming contradictions must be harmonized away if that course be reasonably possible." *State Mut. Life Assurance Co. v. Dischinger*, 263 S.W.2d 394, 401 (Mo. 1953);

*Schwarz v. Waterway Gas & Wash Co.*, 108 S.W.3d 71, 73 (Mo. Ct. App. 2003) ("[W]e give the language used [in a contract] its natural, ordinary, and common sense meaning, and consider the entire contract, along with its object, nature and purpose.") (citation omitted). Damages recoverable in a breach of contract action are those naturally resulting from the breach and which were within the reasonable contemplation of the parties at the time the contract was executed. *Lamb v. Amalgamated Labor Life Insurance Co.*, 602 F.2d 155, 159 (8th Cir. 1979).

As an initial matter, there appears to be no contract in the record stating that Reed has any rights. The notices of reappointment for previous academic years are included in the parties' briefing, but the notice for the 2006-2007 term – the document that would constitute the agreement that was allegedly breached by Columbia College when it "dismissed" Reed in July 2006 – is apparently missing. This alone would technically be grounds for granting summary judgment to Columbia College. However, for the purposes of the parties' cross motions with respect to Count VI, the Court will assume that the terms of Dr. Reed's contract for the 2006-2007 term were the same as the terms in the prior notices of reappointment in the record.[13]

Columbia College makes two basic arguments in support of its motion for summary judgment as to Count VI. First, it argues that Columbia College, through President Brouder,

---

[13] The parties agreed at oral argument that the Court could make this assumption. The parties' arguments in their summary judgment motions are premised on the existence of a contract the terms of which are the same as in previous years. Moreover, this assumption is a reasonable one considering that the notice of reappointment appears to be a form contract the basic terms of which did not change from the 2003-2004 term to the 2005-2006 term.

Case 2:07-cv-04155-NKL   Document 95   Filed 12/31/08   Page 19 of 27

had the right under its contract with Dr. Reed to do what it did. Second, it argues that Dr. Reed did not suffer damages cognizable under Missouri contract law.

### a.    Columbia College's Authority

Columbia College asserts that it properly notified Reed of her non-reappointment for the 2007-08 term and its action in placing her on leave with pay for the 2006-07 term was permitted under the terms of the Faculty Handbook. Reed responds that 1) since she was not permitted to undertake her contractual responsibilities during the 2006-07 term, Columbia College could not have properly notified her of its decision not to reappoint and 2) Columbia College really "dismissed" her under the terms of the Faculty Handbook, but called it something else to deprive her of the Faculty Handbook's protective procedures.

President Brouder's July 10, 2006 letter provided the following notifications to Reed:

> Pursuant to Section V.D.5 of the *Faculty Handbook* (page 32), you are hereby notified that you will not be reappointed for the 2007-08 academic year.

> Pursuant to Section VI.E.1.g of the *Faculty Handbook* (page 62) you are hereby placed on leave with pay for the 2006-07 academic year to pursue professional opportunities. On July 20, 2006 you will be sent a check for the equivalent of your 2006-07 academic year salary plus College-paid benefits. As we need the office you now occupy for replacement faculty please turn in your keys and all other College property to Academic Affairs by July 20, 2006.

Section V.D.5 of the Faculty Handbook provides that "Initial appointments to the faculty are for a probationary period ... during which either party may terminate, at the end of the contract year, without loss of respect. In the event of a decision by the College not to reappoint, the faculty member ... is notified in writing ... no later than December 15 of the second year of academic service and thereafter." (Faculty Handbook, 32). Reed argues that

20

because President Brouder notified her of non-reappointment for the 2007-08 academic term before the start of the 2006-07 term, the July 10, 2006 notice was "in contravention to the intent and requirements of the Faculty Handbook." The plain language of Section V.D.5 is to provide notice to probationary faculty to prepare to find other employment during the spring term should they not be selected for advancement. President Brouder's letter was issued before December 15, 2006, which is the only notice requirement as to the 2007-08 academic term.

However, Section VI.E. of the Faculty Handbook clearly does not vest the President with the sweeping discretionary powers asserted by Columbia College to relieve Reed of her teaching and administrative responsibilities for an entire academic term for which she had just recently been appointed. Section VI.E of the Faculty Handbook enumerates the circumstances under which Columbia College "permits absence from the classroom and other responsibilities without loss of compensation in certain particular kinds of circumstances and for limited periods of time." (Faculty Handbook, 61). These circumstances include sick leave, emergency leave, court duty, military duty, holidays and attendance at professional conferences. The final paragraph of SectionVI.E provides that "[f]aculty may be granted leave with pay by the President for other circumstances deemed appropriate by the President." The plain meaning of Section VI.E is to provide faculty, not the administration, an avenue for excused absences from contractual responsibilities, not vice versa. The College's interpretation would enable the President to circumvent the lengthy and detailed provisions for resolving dismissals and grievances outlined in Section V, and would violate

Case 2:07-cv-04155-NKL   Document 95   Filed 12/31/08   Page 21 of 27

the *ejusdem generis* canon of construction. The Court rejects Columbia College's interpretation of Section VI.E.

However, the fact that Columbia College has no authority under Section VI.E. to place Reed on leave with pay for the entire academic term does not mean that President Brouder's actions constituted either a nonreappointment under Section V.D.5 or a dismissal under Section V.J, as Reed suggests. Section V.J., "Discipline and Dismissal" of the Faculty Handbook, contains actions, limits, notification and procedures for dismissal of a probationary tenure-track faculty member. A "dismissal" is defined as "the permanent removal of a faculty member from contractual responsibilities." (Faculty Handbook, 40). "In case of dismissal, the President or President's designee notifies the faculty member by certified letter of the action." *Id*. at 40-44.

Because President Brouder admits that he "relieved" Reed of her teaching duties, (Brouder Dep. 40), Reed argues that he therefore "dismissed" her within the meaning of the Faculty Handbook, and that Columbia College's subsequent failure to afford Reed certain procedural protections provided to faculty members who are "dismissed" as laid out in the Faculty Handbook[14] constituted a breach of the contract. However, reading Section V.J. *in*

---

[14]Upon dismissal, a faculty member is entitled to preliminary proceedings where "appropriate administrative officers" discuss the matter with the faculty member directly. *Id*. The President must state the grounds for the dismissal must be incorporated in a letter to the faculty member, who must respond, and a hearing before the TRAP Committee must be held. *Id*. None of these procedural protections were afforded Reed, although she commenced an internal grievance procedure as governed by Section V.N.1.d of the Faculty Handbook delineating the procedures for an Appeal of Decision not to Renew Annual Contracts of Non-tenured Full-time Faculty. While the procedures in Section V.N. duplicate aspects of dismissal for cause in Section V.D., an important difference is the right to a formal hearing, which is required in a

*pari materia* with other provisions in the employment contract, Reed was clearly not "dismissed." The contract itself contemplates that Reed's duties were subject to reassignment by Columbia College; Paragraph 9 of each of the Notices of Appointment states "that "the College may reassign duties." Thus, President Brouder's removal of Reed's teaching duties without terminating her employment did not permanently relieve her of all her contractual responsibilities; under Paragraph 9 of the contract, he effectively reassigned her duties to pursue other professional opportunities which could include a myriad of professional development options. This was not a permanent removal of Reed's contractual duties because President Brouder could have acted again within the 2006-2007 term to reassign Reed some or all of the duties he had assigned away. It is also clear that a "dismissal" or "termination" under the faculty handbook does not contemplate that the employee will continue to receive his or her salary for the remainder of any contract or period of appointment.

At oral argument on December 19, 2008, Reed's attorney argued that even if the College had the authority to reassign duties under paragraph 9, it did not have the authority to assign away *all* of her contractual duties, nor to deprive her of her right to the status of faculty member at Columbia College, without recourse to the dismissal provisions of Section V.J. Plaintiff points to no contractual provision that establishes any right to the "status" of faculty member at Columbia College that could have been breached. Further, while Reed

---

dismissal for cause, but is left up to the discretion of the TRAP Committee where a grievance action is commenced by the faculty member. (Faculty Handbook, 50). In this case, Reed was totally deprived of a right to a hearing. (Reed Dep. 290-93).

was deprived of her voicemail, her computer, and her office space, she does not dispute that she continued to represent herself as an employee of Columbia College during the 2006-2007 term and subsequent to President Brouder's removal of her duties.

### b.    Reed's Damages

Columbia College next contends that even if it were found to have breached its contract with Reed, she was not damaged because she was paid full salary and benefits for the 2006-07 academic year.  According to Columbia College, loss-of-reputation damages are available only in tort actions.  (Doc. 44, 10).  While the Faculty Handbook provides that "loss of respect" is relevant to nonreappointment,[15] neither the Handbook nor any other provision in the contract makes reference to "loss of respect" in cases of dismissal of a non-tenured employee.  Reed's claim is based upon her argument that she was 'dismissed' for the 2006-2007 term without the procedural protections she should have been afforded under the Handbook; she does not and could not claim that the College breached its contractual obligations to her by virtue of not reappointing her for the 2007-2008 term.  Thus, Reed's claim for damages – which is based only upon her claim that she was 'dismissed' during the 2006-2007 term – must fail as a matter of law – there is no evidence in the record that the parties contemplated "loss of respect" damages in cases of dismissal.

In a breach of contract action under Missouri law, plaintiffs may recover damages "naturally resulting from the breach . . . which were within the reasonable contemplation of

---

[15]Section V.D.5. provides that "Initial appointments . . . are for a probationary period or for the term specified in a renewable non-tenure-track appointment, during which either party may terminate, at the end of the contract year without loss of respect."

Case 2:07-cv-04155-NKL   Document 95   Filed 12/31/08   Page 24 of 27

the parties at the time the contract . . . was executed. *Brion v. Vigilant Ins. Co.*, 651 S.W.2d 183, 184-85 (Mo. Ct. App. 1983). In this case, even if there had been a dismissal, there is no indication that "loss of reputation" damages were contemplated by the parties as an element of damages when the procedures listed in Section V.J. were not followed; this section does not contain the "without loss of respect" provision found in the reappointment section of the Handbook.[16]

As a matter of law, Columbia College had the authority to reassign Reed's contractual

_____

[16]Defendants are correct that the *Brion* case does not stand for the proposition that reputation damages are generally recoverable in breach of contract actions. The *Brion* case did not deal with an employment contract, and the question in that case was not whether the plaintiff was entitled to recovery, but rather whether the plaintiff's allegations were sufficient to withstand a motion to dismiss. *See Brion*, 651 S.W.2d 183. The court in *Brion* specifically noted that:

> the actual damages which appellant may recover upon adequate proof of their measure is not the issue before this court. The sole issue presented is whether appellant's petition states a claim upon which relief can be granted. Appellant's petition alleges facts sufficient to demonstrate execution of a valid contract and breach of the contract by respondent. This is sufficient to state a claim for at least nominal damages. *Sunny Baer Co. v. Slaten*, 623 S.W.2d 595, 598 (Mo.App.1981); Duncan v. Kelly, 435 S.W.2d 29, 34 (Mo.App.1968). Dismissal of the petition was, therefore, improper. We note that the contract of insurance involved here is more than a simple liability insurance policy. In recognition of the value of a professional reputation, the instant contract gives the insured the express right to control the settlement aspect of litigation and thereby protect that reputation. The breach of this contract may, therefore, give rise to damages not generally recoverable in a conventional breach of contract action.

*Id*. at 185. Unlike the plaintiff in the *Brion* case, Reed does not allege that Columbia College breached the provision in her contract with it that discussed "loss of respect" – the provision on reappointment. Instead, Reed alleges that Columbia College breached the contract by failing to afford her the procedural protections contained in Section V.J. for dismissals, a provision which does not contain language regarding "loss of respect." Thus, "loss of respect" is not even mentioned in the contractual provision at issue here, much less contemplated as an element of damages for breach.

Case 2:07-cv-04155-NKL   Document 95   Filed 12/31/08   Page 25 of 27

duties during the 2006-2007 term. Columbia College continued to pay Reed, and could have reassigned duties back to her within that contractual term. No reasonable juror could find that she was "dismissed" - that she was *permanently* removed from her contractual responsibilities. Furthermore, Reed has not suffered damages cognizable under Missouri contract law. Therefore, no reasonable juror could find for Reed on her breach of contract claim. Columbia College is entitled to judgment on Count VI.

### 4.    Count VIII - Punitive Damages

There is no independent cause of action for punitive damages under either federal or Missouri law; punitive damages are a type of recovery available in some instances but not others. As discussed above, the only issues that remain for trial relate to Count II, Reed's claim under the Equal Pay Act.

Punitive damages are not available to Reed under the Equal Pay Act. *See Jones v. City of Philadelphia*, No. Civ.A.04-85, 2006 WL 851224 at *6 (E.D. Pa. March 28, 2006) (holding that 29 U.S.C. § 216(b) of the Equal Pay Act authorizes "liquidated" but not "punitive" damages); *Aucoin v. Kennedy*, 355 F.Supp.2d 830, 841 (E.D. La. 2004) (dismissing a claim for punitive damages based on the Equal Pay Act because no punitive damages award authorized in the Act). Therefore, as a matter of law, Reed cannot recover punitive damages on the only remaining claim in this case.

## II.    CONCLUSION

Accordingly, it is hereby

ORDERED that Columbia College's Motion for Summary Judgment [Doc. # 39] is

GRANTED as to Count III, Count IV (gender discrimination under Missouri law), Count V,

Count VI and Count VIII and DENIED as to Count II.  It is further

ORDERED that Donna Reed's Motion for Summary Judgment [Doc. # 38] is

DENIED.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 31, 2008
Jefferson City, Missouri